# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JAIYUANA RAYSHAWN YOAKUM and JOHNTOVIA PRESTON, <br><br> Plaintiff <br><br> v. <br><br> HOBBY LOBBY STORES, INC. and PETEFISH GENE PETEFISH, <br><br> Defendant | Case No.: 2:23-cv-01740-APG-DJA <br><br> **Order Partially Granting Defendants' Motions for Partial Summary Judgment** <br><br> [ECF Nos. 39, 40] |

Jaiyuana Rayshaun Yoakum and Johntovia Preston contend they were subject to racial discrimination during a visit to for a Hobby Lobby store.  They sue Hobby Lobby Stores, Inc. and assistant manager Petefish Gene Petefish, asserting claims for racial discrimination under Nevada Revised Statutes (NRS) § 651.070; battery; assault; intentional infliction of emotional distress (IIED); negligent hiring, training, and supervision; and conversion.  The defendants move for partial summary judgment on the claims of racial discrimination, IIED, and negligent training, hiring, and supervision and on the plaintiffs' demand for punitive damages.

I deny summary judgment as to Yoakum's racial discrimination claim, and I deny summary judgment as to punitive damages against Petefish.  These claims present genuine issues of material fact.  I grant summary judgment to the defendants on Preston's racial discrimination claim because Preston does not show that she was asked to leave the store because of her race.  I grant summary judgment to the defendants on the IIED claims because Petefish's behavior was not extreme and outrageous.  I grant summary judgment to the defendants on the negligent hiring, training, and supervision claims because the plaintiffs do not present evidence showing that Hobby Lobby breached its duty of care.  Finally, I grant summary judgment regarding

punitive damages against Hobby Lobby because the plaintiffs do not show that Hobby Lobby knew Petefish was unfit for his position.

## I.    BACKGROUND

The parties are familiar with the facts, so I repeat them only as necessary to resolve the pending motions.  Yoakum and Preston are African American women who went to Hobby Lobby on September 16, 2022. ECF No. 39-6 at 11; 42-1 at 4-5.  Preston entered the store a few moments after Yoakum. ECF No. 39-6 at 6.  Preston heard a cashier call for someone to follow Yoakum, describing her as an African American woman in a jean jacket with a big purse. ECF No. 39-6 at 6.  Petefish responded to the call and approached Yoakum. *Id.* at 7; ECF No. 39-3 at 4.  Preston asked why Petefish was following Yoakum, and he said she was a "code ten," meaning he believed she was a theft risk due to carrying a large purse. ECF Nos. 39-3 at 16; 42-1 at 25.

Yoakum began taking a video of the interaction, which begins with Preston and Yoakum arguing that Petefish should not follow Yoakum just for carrying a big purse. ECF No. 46-2,[1] Yoakum footage at 0:00-0:12.  Petefish said, "If you guys just want to head out, I'll give you corporate's number and you can complain." *Id.* at 0:12-0:15.  He then said, "Okay, so I'm just going to follow you guys around.  You guys are a code ten." *Id.* at 0:16-0:20.  Yoakum asked, "Why are you following me around, . . . I just walked in your store?" *Id.* at 0:20-0:22.  Petefish gestured to Preston and said, "The aggressive hostility that I'm getting from her kind of dictates what's going on." *Id.* at 0:22-0:27.

---

[1] The defendants filed a notice of manual filing for this video, but the clerk's office did not receive the video. ECF No. 41.  I therefore refer to the same video submitted by the plaintiffs.

2

Preston said, "Yes, because you – first of all, I feel like this is racism because as soon as she walked in your store – of course I'm going to feel this type of way." *Id.* at 0:27-34.  Petefish responded, "I get it, I get it, let me give you the – I know, I don't want to have this conversa – I'm *so* sorry, I swear," and Preston talked over him: "You didn't even give her a chance!" *Id.* at 0:30-0:37.  Yoakum also talked over Petefish and Preston. *Id.*  To this, Petefish said, "Okay! Out!  You're out of my store.  Now.  Go!" *Id.* at 0:37-0:40.  He then grabbed Preston's shopping cart and wheeled it to the front of the store, shouting, "You're out of my store, now!  You're done!" *Id.* at 0:40-0:46.  Preston testified that Petefish snatched the basket from her hand. ECF No. 39-6 at 19.  Petefish then picked up Preston's purse from the cart and showed it to her, saying, "You want your purse?  If you want it, follow me." Yoakum footage at 0:46-0:47.  As he wheeled the cart out of the store he said, "I'm not dealing with your aggressive hostility." *Id.* at 0:47-0:57.  Yoakum said, "I don't even know what's going on. . . . I've been quiet this whole time." *Id.* at 0:57-0:58.

Petefish walked back to the women, who had followed him to the store entrance, and said to Preston, "Don't come into my store aggressive.  That's the problem, I'm not having this conversation," to which Preston replied, "Shut the fuck up." *Id.* at 0:58-1:07.  Petefish replied, "Okay, and now you've cussed in a Christian store." *Id.* at 1:07-1:09.  There was some crosstalk, and Petefish turned to Yoakum and said, "Please leave.  I am so sorry that she is acting like this. This was not going to be an issue, she made it an issue.  You were fine." *Id.* at 1:11-1:18. Preston continued shouting and Petefish turned to her and said, "You need to leave!  You need to go!" *Id.* at 1:18-1:26.  He then told Yoakum that he would tell her more once Preston left. *Id.* at 1:26-1:30.  Preston continued shouting, and Petefish waited until she left. *Id.* at 1:30-1:54.

Yoakum asked why Petefish was called to follow her, and he explained, "The size of your purse and the fact that it is open was brought to my attention." *Id.* at 2:05-2:19.  He continued, "So, once loss prevention is notified that somebody has something of that size, we then go take a look at them. . . .  I hadn't even seen who you were at this point. . . .  All we see is purse. . . ." *Id.* at 2:20-2:57.  This was interspersed with Yoakum's interjections. *Id.*  Petefish said, "You were not an issue.  At all. . . .  When [Preston] came in, she heard the code called and saw me rush up, and then she saw me essentially looking for you . . . she went aggressive.  Now when people come in and they're immediately aggressive like that, they have a tendency to be up to something nefarious." *Id.* at 3:22-3:51.

Yoakum argued that following her was discrimination and profiling and that she would be irritated and frustrated too. *Id.* at 4:03-4:08.  Petefish said, "Yep, okay, I can totally understand that." *Id.* at 4:08-4:09.  Petefish said large bags are allowed in the store and Yoakum asked, "then why do you profile people that carry large purses?" *Id.* at 5:33-5:39.  Petefish replied, "uh, I don't have a good reason." *Id.* at 5:39-5:41.  Yoakum then left of her own volition. *Id.* at 5:41-5:47; ECF No. 42-1 at 27.

At the time of the incident, there was another African American woman in the store with a backpack who later told the plaintiffs outside the store that no one from Hobby Lobby had approached her. ECF No. 39-6 at 8-9.  Additionally, while Preston and Yoakum were still outside the store, they observed Petefish follow two white people with large Party City bags outside, accuse them of stealing, and threaten to call the police. *Id.* at 9-10; ECF No. 42-1 at 27-28.

Some days later, Yoakum called the Hobby Lobby store to determine when Petefish would be working. ECF No. 42-1 at 32.  She went to the store on September 23, 2022 with her

white friend, Hali[2] Porter. *Id.* at 33-36; *see generally* ECF Nos. 49-4; 49-5; 49-6 (collectively, Porter footages).  Porter carried the same purse that Yoakum carried during the incident, and Yoakum carried another large purse. ECF No. 42-1 at 4, 33, 37-38.  Both women walked around the store separately, and no one came to speak with or surveil either woman. *Id.* at 41; *see generally* Porter footages.  After ten minutes, both women left. ECF No. 42-1 at 35; ECF No. 49-6 Yoakum footage.  Petefish walked by in another aisle and did not interact with either woman. ECF No. 49-4 Porter footage at 3:17-3:18; 42-1 at 39.

Hobby Lobby fired Petefish on October 6, 2022 after an incident where he violated the store's "hands off" policy by taking stolen merchandise from the bag of a woman of an unknown race while she was wearing it. ECF Nos. 46-3 at 5-7; 39-5 at 2.  In deposition testimony, Petefish said that prior to the incident with Yoakum and Preston, Hobby Lobby coached him on its "hands off" policy due to a previous incident. ECF No. 46-3 at 8.  Hobby Lobby ran a background check when it hired him. ECF No. 39-3 at 5.  Hobby Lobby's loss prevention policies list large or empty bags as a sign of potential shoplifting risk. ECF No. 39-4 at 2.

Based on these allegations, the plaintiffs filed this lawsuit.  The defendants move for summary judgment on the racial discrimination, IIED, and negligent hiring, training, and supervision claims, as well as punitive damages for both defendants.

## II.    ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[2] Deposition transcripts write Porter's name as "Hailey," but the plaintiffs' briefs spell it as "Hali." *See, e.g.*, ECF Nos. 46 at 6; 42-1 at 43.

56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotation omitted).

**A. I grant the defendants' motions for summary judgment regarding NRS § 651.070 as to Preston, but I deny it as to Yoakum.**

"All persons are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation, without discrimination or segregation on the ground of race, [or] color . . . ." NRS § 651.070. NRS § 651.090(a) and (b) provide a private right of action if a person withholds, denies, deprives, intimidates, or interferes with a person's exercise of a right or privilege secured by § 651.070, or attempts to do. The Supreme Court of Nevada looks to federal courts for guidance in discrimination cases due to the "similarity between Title VII of the 1964 Civil Rights Act and

6

Nevada's anti-discrimination statutes." *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) (internal footnote omitted).

To establish a prima facie case for a race discrimination claim in a non-employment context, the plaintiffs must show that (1) they are members of a protected class; (2) they attempted to contract for services; and (3) they were denied the right to contract for those services. *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006). The Ninth Circuit has also applied a fourth element, that "such services remained available to similarly-situated individuals" not in the plaintiffs' protected class, without deciding whether this element is required in non-employment cases. *Id.*[3] "The proof required to establish a *prima facie* case is minimal and does not even need to rise to the level of a preponderance of the evidence." *Id.* at 1144 (quotation omitted). If the plaintiffs establish their *prima facie* case, the burden shifts to the defendants to prove they "had a legitimate non-discriminatory reason" for their action. *Id.* If they succeed in doing so, the plaintiffs must then prove that this reason was "merely a pretext for intentional discrimination." *Id.* "[T]he proper procedure . . . is to set before the factfinder the task of analyzing the entire record in order to evaluate the credibility of the reasons proffered, the possibility of other non-discriminatory reasons, and the ultimate likelihood that the main motive was discriminatory." *Id.* at 1149.

The plaintiffs are both African Americans who attempted to shop at Hobby Lobby, so the first two elements are met. The parties dispute whether the defendants denied the plaintiffs service and, if so, whether that was due to their race.

////

---

[3] The Seventh and Sixth Circuits disagree on whether to use the fourth element in a non-employment context. *See Lindsey*, 447 F.3d at 1145. The parties do not discuss the application of this element here.

1. <u>Preston's claim fails because she does not present evidence that the defendants denied her public accommodation due to her race.</u>

Preston entered Hobby Lobby to shop, and Petefish removed or attempted to remove her from the store by telling her to leave, taking her cart with her purse, and ordering her out of the store. The defendants argue that it is reasonable to remove a shouting customer from a store and doing so is not based on race. Preston responds that Petefish removed her from the store based on her race because he escalated the confrontation after she objected to Yoakum being racially profiled as a thief.

Preston agreed that asking someone to leave after they have yelled in a store is reasonable and affirmed that the cashier did not point her out. ECF No. 39-6 at 14, 17, 28. She also agreed that she was being aggressive and hostile before Petefish said she needed to leave the store because she was challenging perceived racial profiling. ECF Nos. 39-6 at 9; *see also* 46-2, Yoakum footage at 0:22-34. Petefish consistently stated that he was ejecting Preston from the store because of her hostility and did not mention her race. ECF No. 46-2, Yoakum footage at 0:47-0:57, 1:03-1:05, 1:14-1:18, 3:41-3:50. Yoakum, who is also African American, did not yell and Petefish did not treat her in the same way. *Id.* at 3:22-3:25, 0:57-0:58. Preston presents no evidence that Petefish did not eject a white person who yelled in the store.

Even viewing the facts in the light most favorable to Preston, a reasonable jury could not find that Petefish or any other Hobby Lobby employee denied or attempted to deny Preston the ability to shop in the store due to her race or color. She was being aggressive in the store before Petefish said she needed to leave, no Hobby Lobby employee pointed out her race, and Petefish repeatedly affirmed that the reason for ejecting her was her hostility. Thus, Preston has not presented a genuine issue of material fact that Petefish or Hobby Lobby withheld or attempted to

withhold a public accommodation due to her race or color under NRS § 651.070.  I therefore grant the defendants' summary judgment on Preston's racial discrimination claim.

      2.  <u>There is a genuine issue of material fact that the defendants denied Yoakum public accommodations due to her race.</u>

The defendants argue that Petefish never told Yoakum to leave the store, so she was not denied service.  They also argue that under Hobby Lobby's race-neutral policy, Petefish merely investigated a customer with a large open purse, so there is no evidence of race discrimination.  Yoakum responds that because Petefish asked her to leave the store, he denied her services provided by a place of public accommodation.  She also asserts that by intimidating her, he interfered with her right to full and equal enjoyment of those services.  Yoakum also contends that Petefish attempted to deny her service and intimidate her because she was African American.  She points to Preston's testimony that the cashier described her as an African American woman and the evidence that Porter, a white woman with the same large bag, was not intimidated or asked to leave.

There is some ambiguity about whether Petefish attempted to deny Yoakum the right to shop in the store.  It appears that when he yelled, "You're out of my store.  Now.  Go!" and "You need to leave!  You need to go!" he was addressing Preston alone. *Id.* at 0:37-0:40, 1:18-1:26.  At her deposition, Yoakum deposition testified that she felt Petefish was only telling Preston to leave at first. ECF 42-1 at 17.  However, he did invite both Yoakum and Preston to leave the store at the beginning of the video, and after he ran Preston's shopping cart and purse out of the store, he turned to Yoakum and said, "Please leave." ECF No. 46-2, Yoakum footage at 1:11-1:12, 0:12-0:15.  Yoakum also testified that she felt he asked her to leave. ECF No. 42-1 at 19.  Additionally, Petefish said he was going to follow both plaintiffs around the store as they

shopped. ECF No. 46-2, Yoakum footage at 0:16-0:20.  A reasonable jury could interpret this statement and behavior as intimidating Yoakum for the purpose of interfering with her right to shop in the store.  Viewing the facts in the light most favorable to Yoakum, a reasonable jury could find that Petefish at least attempted to deny her service by asking her to leave the store and that he intimidated her by saying he would follow her while she shopped.

Viewing the facts in the light most favorable to Yoakum, a reasonable jury also could find that the defendants selectively followed their loss prevention guidelines due to her race and color.  Yoakum presents evidence that the cashier pointed her out and noted her race when describing her. ECF No. 39-6 at 6.  The defendants point to Hobby Lobby's race-neutral loss prevention policies that identify large open bags as a theft risk, and Petefish's statement, "All we see is purse," as evidence of a legitimate non-discriminatory reason to surveil Yoakum. ECF Nos. 46-2, Yoakum footage at 2:56-2:57; 39-4 at 2.  Yoakum replies with evidence that a white woman with the same purse in the same store while Petefish was working did not trigger the same enforcement of loss prevention policies. *See generally* ECF Nos. 49-4; 49-5; 49-6 Yoakum footage; 42-1 at 41.  Thus, there are genuine issues of material fact as to whether the defendants denied Yoakum the services of their public accommodation, or intimidated her in interference with those services, and whether they did so because of her race.[4]  I therefore deny the motion for summary judgment on Yoakum's racial discrimination claim under NRS § 651.070.

/ / / /

/ / / /

---

[4] Though the parties do not address the application of the fourth element requiring services to remain available to similarly-situated individuals who were not members of the plaintiff's protected class, the evidence showing that a white woman with the same bag was not followed or asked to leave creates a material issue of fact on this element as well.

**B. The plaintiffs' intentional infliction of emotional distress claim fails because Petefish's conduct was not extreme or outrageous.**

A plausible IIED claim must allege "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress;" (2) the plaintiff suffered severe or extreme emotional distress; and (3) "actual or proximate causation." *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (en banc) (quotation omitted). Extreme and outrageous conduct "is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (simplified). "Liability for emotional distress will not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Abrams v. Sanson*, 458 P.3d 1062, 1070 (Nev. 2020) (simplified). To demonstrate severe or extreme emotional distress, a plaintiff must show "objectively verifiable indicia of the severity of his emotional distress." *Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998).

The defendants argue that it was reasonable for Petefish to eject Preston from the store because she was yelling. The plaintiffs respond that Petefish's behavior was extreme and outrageous because he publicly assaulted and battered Preston, verbally abused both plaintiffs, and functionally defamed them.

While I do not condone Petefish's insulting behavior, it was not extreme and outrageous as a matter of law. It is reasonable for an employee engaging in loss prevention to surveil customers, and it is reasonable to remove a customer from a store who is shouting. Petefish may have been rude, insulting, and possibly even discriminatory as to Yoakum, but his conduct was not outside all possible bounds of decency. *See Roche v. Audio Visual Servs. Grp.*, No. 2:09-cv-01810-LDG-GWF, 2010 WL 3021575, at *2 (D. Nev. July 28, 2010) (stating that a "run of the

11

mill harassment or discrimination claim" is insufficient to establish intentional infliction of emotional distress); *Bollinger v. Thawley*, No. 3:05-cv-00155-LRH-RAM, 2007 WL 9728686, at *4 (D. Nev. Feb. 5, 2007), *aff'd*, 304 F. App'x 612 (9th Cir. 2008) (holding that abusive yelling is insufficient). People must be hardened and suffer "occasional acts that are inconsiderate and unkind," and even viewing the facts in the light most favorable to the plaintiffs, no reasonable jury could find that Petefish's behavior rose above this level of simple rudeness. *Maduike*, 953 P.2d at 26 (quotation omitted). Additionally, Preston stated in her deposition that she did not experience any emotional distress that she attributes to this incident. ECF No. 39-6 at 21. I therefore grant summary judgment in the defendants' favor on the IIED claims.

### C. The plaintiffs' negligent hiring, training, and supervision claim fails because they do not present evidence that Hobby Lobby breached its duty of care.

To establish a claim for negligent hiring, training, and supervision in Nevada, the plaintiffs "must show (1) a general duty on the employer to use reasonable care in the [hiring,] training[,] and/or supervision of employees to ensure that they are fit for their positions; (2) breach; (3) injury; and (4) causation." *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028 (D. Nev. 2013) (quotation omitted). "An employee's wrongful behavior does not in and of itself give rise to a claim for negligent training and supervision." *Id.* "[T]here must also be evidence that the employer was negligent in ensuring [the employee's] fitness for the position." *Borenstein v. Animal Found.*, 526 F. Supp. 3d 820, 839 (D. Nev. 2021).

Hobby Lobby argues it did a background check on Petefish and gave him additional training when needed, thereby discharging its duty of care. The plaintiffs respond that Hobby Lobby negligently supervised Petefish because he violated its policies, or it negligently retained him because he had previously been coached on its "hands off" policy.

The plaintiffs do not present sufficient evidence that Hobby Lobby breached its duty of care in hiring, training, or supervising Petefish.  Petefish testified Hobby Lobby conducted a background check upon hiring him and the plaintiffs point to no evidence that would suggest Hobby Lobby knew or should have known Petefish was not fit for his job at the time of hire.  ECF No. 39-3 at 5

Petefish testified that prior to the incident at issue, Hobby Lobby coached him after a "similar situation where [he] either touched a bag or cart to prevent a loss." ECF No. 46-3 at 8.  The plaintiffs do not present evidence regarding the situation that caused Petefish to be coached on the "hands off" policy or explain why it would put Hobby Lobby on notice that Petefish was unfit to continue working there.  Even if Petefish did previously engage in wrongful behavior, Hobby Lobby coached him on it, thereby discharging its duty of care by providing more training to correct that behavior.  Further, the incident that led to Petefish's termination was after the incident at issue here and so could not have put Hobby Lobby on notice that Petefish was unfit for his position at the time.

Even viewing the facts in the light most favorable to the plaintiffs, no reasonable jury could find that Hobby Lobby breached its duty of care in hiring, training, or supervising Petefish.  I therefore grant summary judgment in the defendants' favor on the negligent hiring, training, and supervision claims.

**D. Punitive damages are available as to Petefish, but not as to Hobby Lobby.**

    1. <u>Punitive damages are available as to Petefish because there is a genuine issue of material fact of whether he acted with malice.</u>

"[P]unitive damages may be awarded when the plaintiff proves by clear and convincing evidence that the defendant is 'guilty of oppression, fraud or malice, express or implied.'"

13

*Bongiovi v. Sullivan*, 138 P.3d 433, 450-51 (Nev. 2006) (quoting NRS § 42.005(1)).  "'Malice, express or implied' means conduct which is intended to injure a person, or despicable conduct which is engaged in with conscious disregard of the rights or safety of others." NRS § 42.001(3). "'Conscious disregard' means the knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences." NRS § 42.001(1).

The plaintiffs may recover punitive damages against Petefish on several of their remaining claims.  The defendants have not moved for summary judgment on the plaintiffs' assault and battery claims or Preston's conversion claim, and Yoakum's race discrimination claim will proceed.  Viewing the facts in the light most favorable to the plaintiffs, a reasonable jury may find that Petefish acted with malice or conscious disregard of the plaintiffs' rights and safety.  I therefore deny the motions for summary judgment as to punitive damages against Petefish.

> 2.   <u>Punitive damages are not available against Hobby Lobby because the plaintiffs do not show it had advance knowledge that Petefish was unfit for his position.</u>

Under Nevada law, an employer is liable for punitive damages for an employee's actions only if the plaintiff proves one of three specific bases: (a) the employer had advance knowledge that the employee was unfit for the job, (b) the employer authorized or ratified the employee's wrongful act, or (c) the employer is "personally guilty of oppression, fraud or malice, express or implied." NRS § 42.007(1).  To recover punitive damages from a corporation, the plaintiff must prove that one of these bases is met by an "officer, director or managing agent of the corporation

who was expressly authorized to direct or ratify the employee's conduct on behalf of the corporation." NRS § 42.007(1).

The defendants argue the plaintiffs did not identify an officer, director, or managing agent who had advance knowledge that Petefish was unfit for his position.  The plaintiffs respond that the store manager had advance knowledge that Petefish was unfit for his position.

The plaintiffs do not present evidence that a Hobby Lobby officer, director, or managing agent had advance knowledge that Petefish was unfit for his position.  In his deposition testimony, Petefish identified one prior situation in which Hobby Lobby coached him on its "hands off" policy, but without more this does not constitute advance knowledge that Petefish was unfit for the job. ECF No. 46-3 at 5-7.  One incident, followed by corrective coaching, cannot constitute advance knowledge of unfitness for a job.  To hold otherwise would convert it to *de facto* strict liability.  Even viewing the facts in the light most favorable to the plaintiffs, no reasonable jury could find that a Hobby Lobby managing agent had advance knowledge that Petefish was unfit for his position.  I therefore grant summary judgment in Hobby Lobby's favor on the plaintiffs' demand for punitive damages.

**III.    CONCLUSION**

I THEREFORE ORDER that the defendants' motions for summary judgment **(ECF Nos. 39, 40) are GRANTED IN PART**.  I grant summary judgment in favor of the defendants on the plaintiffs' claims for intentional infliction of emotional distress, and negligent hiring, training, and supervision, and Preston's claim for violation of NRS § 651.070.  I also grant summary

/ / / /

/ / / /

/ / / /

judgment in Hobby Lobby's favor on the plaintiffs' demand for punitive damages. I deny summary judgment as to Yoakum's racial discrimination claim and demand for punitive damages against Petefish.

DATED this 23rd day of January, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE